UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RENISHA RAMSEY, | ) | CASE NO. 1:15CV2405 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| Vs. | ) | |
| | ) | |
| CITY OF CLEVELAND, et. al, | ) | OPINION AND ORDER |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter comes before the Court upon the Motion for Summary Judgment (ECF DKT #25) pursuant to Federal Rule of Civil Procedure 56(a) by Defendants City of Cleveland, et al., to dismiss Plaintiff's claims made under R.C §149.43 and 42 U.S.C. §1983. For the following reasons, the Motion for Summary Judgment is GRANTED in part, and DENIED, in part.

**I. FACTUAL AND PROCEDURAL HISTORY**

Plaintiff Renisha Ramsey has brought suit against the City of Cleveland ("City"), the Cleveland Municipal Court ("Municipal Court"), Municipal Court probation officer Spencer Bellamy ("Bellamy"), Municipal Court probation officer Lacora Turner ("Turner"), Municipal Court bailiff Denise Rudolph ("Rudolph") and unnamed Defendants. On May 19, 2014, Plaintiff was found guilty of two misdemeanors in Municipal Court for violating motor vehicle operation laws. *State of Ohio/City of Cleveland v. Renisha Ramsey*, Case No. 2013 TRD 064344. Plaintiff

1

was ordered to perform 30 hours of community service and enter the "Get on Track" program. She completed her community service on June 26, 2014. On October 17, 2014 the Municipal Court entered judgement that her sentence was satisfied. However, Defendant City alleges that Plaintiff did not complete her "Get on Track" program. As a result, the Municipal Court scheduled a "Get on Track" compliance hearing for January 16, 2015. Plaintiff alleges that she never received notice of the hearing because it was mailed to the wrong address. Plaintiff also alleges the Municipal Court issued that notice on February 19, 2015, after the hearing occurred. The Municipal Court then issued a capias on March 6, 2015 for failure to appear. Plaintiff received notice of the capias on or about March 15, 2016. Plaintiff attempted to call Turner and was unable to reach him. Plaintiff then called Bellamy, who told Plaintiff to come to the Justice Center to resolve the issue.

On March 19, 2016, Plaintiff arrived at the Justice Center. Plaintiff told the front desk that she needed to talk to Bellamy. Plaintiff was directed to the probation floor to wait for Bellamy. Plaintiff alleges that an unnamed Defendant told her she would be arrested and that she should give her property to family waiting in the reception area. Plaintiff also alleges that when she questioned these instructions that an unnamed Defendant told her: "You must think this is Burger King."

Plaintiff alleges she waited for Bellamy for approximately one hour and that Bellamy would be able to correct the improperly issued capias. Plaintiff alleges that Ruldoph approached with an unnamed Defendant, told Plaintiff that she was going to be brought to the holding cell in accordance with Municipal Court policies and stated "get your ass up." Plaintiff protested and wrapped her arms around the bench where she sat. Plaintiff alleges that Defendants lifted her up

2

while she still held the bench.  Shortly afterward, Plaintiff alleges that she was accosted by "maybe ten to fifteen people..."  According to Plaintiff, those Defendants grabbed her head, pulled her hair and one Defendant "put [her] head between his legs..."  Plaintiff alleges Rudolph and unnamed Defendants then threw her to the ground where Defendant Rudolph twisted her arm behind her back and cut her wrists with handcuffs.  Plaintff further alleges when she complained to Rudolph that Rudolph responded "I don't give a fuck.  I'll whip your ass down the hall."  Defendants placed Plaintiff in a cell for approximately 30 minutes.  Defendants took Plaintiff to a court room where she received an apology from a Municipal Court judge for the "misunderstanding."

## II. LAW AND ANALYSIS

### A. Standard of Review

Summary judgment shall be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed.R.Civ.P. 56(a).  The burden is on the moving party to conclusively show no genuine issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy. Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).  The moving party must either point to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *See* Fed.R.Civ.P. 56(c)(1)(A), (B).  A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the nonmoving party.  *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F.3d at 1347.

This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact. *Betkerur v. Aultman Hospital Ass 'n.*, 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404-06 (6th Cir. 1992). The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distributors Benefits Ass 'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

**B. Ohio Public Records Act, R.C. §149.43**

R.C §149.43 states "all public records responsive to the request shall be promptly prepared and made available for inspection to any person at all reasonable times during regular business hours." R.C. §149.43(B)(1) (2016). The purpose of the statute is to "facilitate broader access to public records..." and to do so in a reasonable period of time. R.C. §149.43(B)(1-2). R.C. §149.43(C)(1)(a-b) states when a request is not filled in a reasonable amount of time, the aggrieved party may do one and only one of the following:

4

> (a) File a complaint with the clerk of the court of claims or the clerk of the court of common pleas under section 2743.75 of the Revised Code; [or] (b) Commence a mandamus action to obtain a judgment that orders the public office or the person responsible for the public record to comply with division (B) of this section.

In this case, the Plaintiff did neither (a) nor (b). As a matter of law, there is no claim upon which relief may be granted. The Court grants Defendant City's Motion for Summary Judgment.

**C. City of Cleveland**

While suits against states are barred by the Eleventh Amendment, suits against local governments are not. *Monell v. Department of Social Services of City of New York*, 436 U.S. 659 (1978). Suits against individuals in their official capacity are equivalent to suits against the governmental entity. *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).

Recent cases have examined the well-founded principle that municipal courts are arms of the state and not of the city or county where they reside. *Alkire v. Irving*, 330 F.3d 802 (6th Cir. 2003), which involved a civil suit against a county court, created some ambiguity with respect to the "Eleventh Amendment question" of whether municipal courts are part of local or state governments for § 1983 suits. In *Alkire*, the Sixth Circuit interpreted the Supreme Court case of *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30 (1994) and determined that the most important factor of the arm-of-the-state analysis is who is responsible for paying a monetary judgment. *Alkire* 330 F.3d at 813-14. The *Alkire* decision appeared to leave open the door to suits against county courts as "persons" for the purpose of § 1983. *Id.* That door has since been shut. As the Court pointed out in *Ward v. City of Norwalk*, 640 F. App'x 462, 465 (6th Cir. 2016), the analysis takes into account multiple factors that should be considered in their totality:

> It cannot seriously be argued that an Ohio municipal court is indistinguishable from the municipal corporation in which it sits. The Akron Municipal Court is

5

> part of the Ohio state court system, established by the Ohio state legislature. It is subject to the supervision of the Ohio Supreme Court. The municipal court may not be abolished by the city council, nor may the council expand or restrict the court's jurisdiction. The territorial jurisdiction of the Akron Municipal Court is not coextensive with the city limits of Akron. The employees of the Akron Municipal Court are not city employees subject to the authority of the Akron Civil Service Commission.

*Id.,* quoting *Foster v. Walsh*, 864 F.2d 416 (6th Cir. 1988).

*Ward* established that while the source of money damages carried significant weight in the Eleventh Amendment analysis of § 1983, "every other aspect of the Municipal Court's composition—noted above—weighs in favor of the court's being an arm of the state." *Ward*, 640 F. App'x at 465. "Thus, *Alkire's* emphasis on the source-of-payment factor does not change the conclusion that the...Municipal Court is an arm of the state for § 1983 and Eleventh Amendment purposes, and plaintiffs' money-damage claims against [Court employees] in their official capacities are therefore barred." *Id*.

The Court finds it is not necessary to weigh those factors again today. Nor is it necessary to ask whether the City of Cleveland may be sued for the actions of Municipal Court employees. The Cleveland Municipal Court is an arm of the state and not of City of Cleveland nor Cuyahoga County. The only question is whether the parties named in the suit are employees of the Municipal Court or of the City of Cleveland. As *Ward* plainly shows, Municipal Court employees are employees of the Municipal Court, not the City of Cleveland.

Therefore, because there are no employees of the City of Cleveland among the named Defendants, Plaintiff has no viable claim against Defendant City in the suit. The

Court grants Summary Judgment for Defendant City.

**D. Probation Officers**

The purpose of § 1983 is to provide "a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity..." *Will v. Michigan Dept. of State Police*, 491 U.S. 66 (1989). Claims against municipal court employees acting in their official capacity for money damages "are treated as suits against the Municipal Court." *Ward* 640 F. App'x at 465. Ohio municipal courts are "considered an arm of the state for the purposes of § 1983 and the Eleventh Amendment..." and thus under Eleventh Amendment protection. *Id* at 464.

It is well established that judicial immunity protects judges against liability for damages. *Harlow v. Fitzgerald*, 457 U.S. 814 (1982) ("[S]ocial costs include the expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office."); *Forrester v. White*, 484 U.S., 223 (1988) ([T]hreat of liability can create perverse incentives that operate to inhibit officials in the proper performance of their duties."). This protection extends to other court officers arising from judicial and quasi-judicial functions. *Foster*, 864 F.2d at 417. Even non-discretionary issuances of warrants are judicial acts. *Id* at 418. Clerks, among others, enjoy absolute immunity "from suit in connection with the issuance of the arrest warrant..." *Id.* Additionally, the "mere fact that an error is made in carrying out the judge's instruction is immaterial." *Id* at 417. The Sixth Circuit ruled:

7

> "[W]hen a judge seeks to determine whether a defendant is complying with the terms of probation, the judge is performing a judicial function. To the extent court personnel were investigating whether [defendant] was complying with the terms of his probation, they were performing a quasi-judicial function. To the extent defendants were performing that function at the direction of the judge, they are entitled to quasi-judicial immunity."

*Balas v. Leishman-Donaldson,* No. 91-4073*,* 1992 WL 217735, at *5 (6th Cir. 1992); accord *Loggins v. Franklin County, Ohio*, 218 F. App'x 466, 476 (6th Cir. 2007). Section 1983 claims are barred when such claims are "intimately associated with the judicial phase of the criminal process." *Van De Kamp v. Goldstein*, 129 U.S. 855, 862-64 (2009).

Plaintiff argues that the Parole Violation Report was a non-judicial, executory action. However, as the Court in *Balas* established, the process of inquiring into probation compliance is a quasi-judicial function that comes with quasi-judicial immunity. It follows that the Parole Violation Report qualifies as a part of that process. Plaintiff also argues that because Bellamy and Turner did not exercise proper discretion in reviewing the Plaintiff's file, that "the probation officers failure...to exercise a judicial function is what caused the injury to the [P]laintiff.." Plaintiff argues that a distinction may be made between Turner's and Bellamy's failure to act and a mistake made while carrying out a quasi-judicial function. The Court finds this difference immaterial. Turner and Bellamy merely made a mistake carrying out a judge's original instructions. Such an error does not break the chain of command which preserves quasi-judicial immunity. The Court finds Defendant probation officers Turner and Bellamy immune from this suit because they were performing a quasi-judicial function.

**E. Denise Rudolph and Unnamed Defendants**

Officials who perform discretionary functions are generally entitled to qualified immunity for civil money damages as long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 801 (1982). Where a constitutional violation has occurred, a court may proceed to determine whether the right in question was so clearly established at the time of the violation that a reasonable public official in the same position would have known that he or she was violating that right." *Wilson v. Layne*, 525 U.S. 603, 609 (1999); *Cherrington v. Skeeter*, 344 F.3d 631, 636 (6th Cir. 2012). When qualified immunity is raised as a defense, the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity. *Rodriquez v. Passinault*, 637 F.3d 675, 689 (6th Cir. 2011). Defendants also carry the burden of demonstrating whether the act in question was objectively reasonable in light of the existing law at the time. *Tucker v. City of Richmond, Ky.*, 388 F.3d 216, 220 (6th Cir. 2004). When the issue of qualified immunity is dependent on the facts of the case, the question is one for the jury. *Rodriquez*, 637 F.3d at 689. Whether an official "may be held personally liable for an allegedly unlawful action depends upon the "objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 635 (1987).

The Court finds that there is a genuine question as to whether Rudolph and the other unnamed officials violated the Plaintiff's constitutional rights. Plaintiff alleges that her Fourth and Fourteenth Amendment rights were violated when employees of the Municipal Court used excessive force to detain her. If Plaintiff's allegations are taken as

true, then there is a genuine issue of material fact as to whether Plaintiff's established rights were violated, whether Rudolph and the unnamed Defendants knew or should have known they were violating Plaintiff's established rights and whether their actions were objectively unreasonable in light of the circumstances. The existence of the qualified immunity defense for Rudolph and the unnamed Defendants is dependent on the facts and is a question for a jury. Reviewing the facts in a light most favorable to the Plaintiff, the Court finds the claims against Rudolph and the unnamed Defendants in their individual capacity may go forward. Consequently, the Court finds that Summary Judgment on this issue is not appropriate.

**F. Municipal Court**

The City of Cleveland Municipal Court is not a legal entity that is capable of being sued. *See, e.g., Lawson v. City of Youngstown*, 912 F.Supp.2d 527, 530 (N.D. Ohio 2012); *Williams v. City of Columbus, Ohio*, 892 F.Supp.2d 918, 923-24 (S.D. Ohio 2012) (dismissal of municipal court "because under Ohio law, Ohio courts are not *sui juris*"); see also *Malone v. Court of Common Pleas of Cuyahoga County*, 45 Ohio St.2d 245, 248 (quoting *State ex rel. Cleveland Municipal Court v. Cleveland City Council*, 34 Ohio St.2d 120, 121 (1973)) ("Absent express statutory authority, a court can neither sue nor be sued in its own right."). Therefore, no viable claim can be maintained against the City of Cleveland Municipal Court.

### III. CONCLUSION

For the foregoing reasons, Summary Judgment for City, Municipal Court, Bellamy and Turner is GRANTED. Summary Judgment for Rudolph and unnamed Defendants, in their

10

individual capacity, is DENIED.

**IT IS SO ORDERED.**

<u>s/ Christopher A. Boyko</u>
**CHRISTOPHER A. BOYKO**
**United States District Judge**

**Dated: June 21, 2017**